## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-CR-00359-SEH |
| BRANDON DAVID McCARTHY, and RACHEL CHRISTINE McCARTHY, | |
| Defendants. | |

## OPINION AND ORDER

Defendants are charged in a 41-count superseding indictment with committing various drug crimes under the Controlled Substances Act ("CSA") related to their business of selling and distributing poppy seeds. [ECF No. 98]. However, the CSA says that poppy seeds are not a controlled substance. 21 U.S.C. § 802(19)–(20). For this and several additional reasons explained below, Defendants' joint motion to dismiss the indictment [ECF No. 79][1] is granted. The superseding indictment is hereby dismissed as to Defendants Brandon David McCarthy and Rachel Christine McCarthy.

---

[1] The motion to dismiss was filed before the superseding indictment, and it was directed at the initial indictment. The superseding indictment only makes typographical and similar corrections, and the charges remain the same. Because the same arguments raised by Defendants as to the indictment apply equally to the superseding indictment, I will address the merits of Defendants' motion as applied to the superseding indictment. *See United States v. Lewis*, No. 24-CR-00288-SEH, 2024 WL 4604388, at *1 (N.D. Okla. Oct. 29, 2024).

## I. Background

This is not a typical drug case. Defendants Brandon and Rachel McCarthy operated Lone Goose Bakery, an online retailer for food products like chia seeds, flax seeds, and vanilla beans. [ECF No. 98 at 6].[2] However, nearly all of Lone Goose Bakery's sales came from "unprocessed poppy seeds coated in opium latex." [*Id*. at 6]. The government alleges that "opium latex" is "the milky sap-like substance from which opiate alkaloids, including morphine, codeine, and thebaine, can be extracted," and that "unprocessed poppy seeds" are "poppy seeds that have not had the opium latex removed after harvest." [*Id*. at 2].

Unlike most alleged illegal drug distributors who try to conceal their activities, Defendants posted videos on the internet about their poppy seeds, including video reviews and a step-by-step guide on how to make poppy seed tea. [*Id*. at 6–7]. Brandon McCarthy also published a book titled "How to Make Poppy Seed Tea A Detailed Recipe." [*Id*. at 7]. The purpose of making the tea, according to the government, is to remove the opium latex from the seeds to consume it. [*Id*. at 3]. Defendants advertised the tea's supposed benefits, but they also warned customers that the tea could cause an "opiate overdose." [*Id*. at 7–8]. Indeed, the government alleges that one of

---

[2] References to page numbers refer to the ECF header.

Defendants' customers overdosed and died after consuming poppy seed tea. [*Id*. at 8].

By all accounts, Defendants' business selling poppy seeds was very successful. The government alleges that Defendants shipped tens of thousands of orders of poppy seeds throughout the United States, and that they took in more than $12 million between June 2017 and November 2020. [*Id*. at 9–10]. They transferred that money into various accounts and spent significant amounts on things like a home, home renovations, vehicles, precious metals, and art. [*Id*. at 10–12].

Based on these allegations, a grand jury charged Defendants in a 41-count superseding indictment with committing various drug crimes under the CSA. For purposes of Defendants' motion to dismiss, these counts fall into two categories: (1) charges involving a controlled substance; and (2) drug precursor charges.

<u>Controlled Substance Charges:</u>

- <u>Count 1:</u> charges Defendants with drug conspiracy in violation of 21 U.S.C. §§ 841(b)(1)(C), 843(d), 846, 853(b). 21 U.S.C. § 846 provides: "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The government alleges that the objects of the conspiracy include violations of the controlled substance statutes and the drug precursor statutes. [ECF No. 98 at 4–5].

3

- <u>Counts 2–8:</u> charge Defendants with distribution of morphine, codeine, and thebaine, Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C). [ECF No. 98 at 13]. § 841(a)(1) makes it unlawful to "distribute ... a controlled substance." In addition to the prohibitions in § 841(a)(1), § 841(b)(1)(C) specifies penalties for "a controlled substance in schedule I or II."

- <u>Count 9:</u> charges Defendants with distribution of morphine, codeine, and thebaine, Schedule II controlled substances, resulting in death in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C). [ECF No. 98 at 14].

- <u>Count 10:</u> charges Defendants with possession of morphine, codeine, and thebaine, Schedule II controlled substances, with intent to distribute in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C). [ECF No. 98 at 15].

- <u>Count 19:</u> charges Defendants with maintaining a drug-involved premises for the purpose of distributing morphine, codeine, and thebaine, Schedule II controlled substances, in violation of 21 U.S.C. § 856(a)(1), 856(b). [ECF No. 98 at 18]. § 856(a)(1) makes it unlawful to "open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."

- <u>Count 20:</u> charges defendants with a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). [ECF No. 98 at 19–20]. § 1956(h) provides: "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." The superseding indictment lists the controlled substance charges *and* precursor charges as the offenses underlying this conspiracy charge. [*Id.* at 19]. However, the "offense[s] defined in [§ 1956]," all focus on controlled substances, not drug precursor charges under 21 U.S.C. § 843. *See* 18 U.S.C. §§ 1956(c), 1961(1).

- <u>Counts 21–41:</u> charge Defendants with engaging in monetary transactions of proceeds derived from a specified unlawful activity in violation of 18 U.S.C. § 1957(a). [ECF No. 98 at 21–22]. § 1957(a)

4

provides: "[w]hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)." § 1957(a) does not delineate between controlled substances and drug precursors. Therefore, these counts fall under both categories of offenses charged in the superseding indictment.

Precursor Charges:

- Count 1: alleges that violations of the drug precursor statutes are among the objects of the conspiracy in this count [ECF No. 98 at 4], so this charge falls under the "precursor charges" category as well.

- Counts 11–17: charge Defendants with knowingly and intentionally distributing a material used to manufacture a controlled substance, knowing, intending, and having reasonable cause to believe that material would be used to manufacture a controlled substance in violation of 21 U.S.C. § 843(a)(7). [ECF No. 98 at 16]. § 843(a)(7) makes it unlawful to knowingly or intentionally "manufacture, distribute, export, or import any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance or listed chemical in violation of this subchapter or subchapter II."

- Count 18: charges Defendants with possession of materials with intent to distribute in violation of 21 U.S.C. § 843(a)(6). [ECF No. 98 at 17]. Similar to § 843(a)(7), § 843(a)(6) makes it unlawful to knowingly or intentionally "possess any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance or listed chemical in violation of this subchapter or subchapter II."

- <u>Counts 21–41:</u> for the reasons explained above, these counts fall under both categories of offenses charged in the superseding indictment.

It is clear why the government would want to prosecute this case. The superseding indictment catalogs Defendants' efforts to advertise the health benefits of poppy seed tea and instruct customers on how to make it even though one of their customers overdosed and died. But none of this overcomes the language Congress chose to use in the CSA that excludes poppy seeds from its prohibitions. For that reason and several others explained below, the superseding indictment must be dismissed as to Defendants Brandon David McCarthy and Rachel Christine McCarthy.

## II. Standard

"On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006). The Federal Rules of Criminal Procedure require that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he

must defend, and enables the defendant to assert a double jeopardy defense." *Todd*, 446 F.3d at 1067 (quotation marks and citation omitted). "[W]here the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Doe*, 572 F.3d 1162, 1173–74 (10th Cir. 2009) (quotation marks and citation omitted). Courts should "avoid considering evidence outside the indictment when testing the indictment's legal sufficiency." *Todd*, 446 F.3d at 1067.

Although the question on a motion to dismiss is not about the sufficiency of the government's evidence, dismissal is proper when "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt." *Id.* at 1068 (quotation marks and citation omitted). Additionally, the indictment "should be read as a whole and interpreted in a common-sense manner . . . ." *United States v. Stoner*, 98 F.3d 527, 531 (10th Cir. 1996) (quotation marks and citation omitted).

## III. Discussion

### A. Statutory Interpretation

Defendants' arguments on this point are not particularly detailed, and they focus exclusively on plain language and ordinary meaning. Nevertheless, Defendants' arguments sufficiently raise the issue of statutory interpretation, so I will conduct a full analysis.

## 1. Legal Framework

### a. General Principles

Issues of statutory interpretation are a question of law for a court to resolve. *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018). When interpreting a statute, the "primary task is to determine congressional intent, using traditional tools of statutory interpretation." *BP America Prod. Co. v. Haaland*, 87 F.4th 1226, 1234 (10th Cir. 2023) (quotation marks and citation omitted). The first step is to look at "the language of the statute itself." *Potts v. Ctr. For Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018). If "the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989).

To determine whether a statute is plain and unambiguous, courts examine "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Wichita Ctr. for Graduate Med. Educ., Inc. v. United States*, 917 F.3d 1221, 1225 (10th Cir. 2019) ("When searching for statutory meaning we also examine the context and structure of the statutory scheme in which a word is used, looking at the statute as a whole."). Courts also "presume that Congress enacted sensible legislation that avoids unjust, impractical, or absurd outcomes." *BP America Prod. Co.*, 87 F.4th at 1234.

8

### b. Specific Relevant Canons of Statutory Interpretation

First, words in a statute do not exist in a vacuum. "The canon of *noscitur a sociis* teaches that a word is given more precise content by the neighboring words with which it is associated" and a meaning "that avoids ascribing to one word a meaning so broad that it is inconsistent with the company it keeps." *Fischer v. United States*, 603 U.S. 480, 481, 487 (2024) (cleaned up). This canon "especially holds that words grouped in a list should be given related meanings." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195 (2012) (quotation marks and citation omitted). "To be sure, in construing a word based on the company it keeps, [courts] are not limited to comparing it only to its immediately surrounding words, but must compare it instead to as much of the statute as provides interpretive guidance." *In re McDaniel*, 973 F.3d 1083, 1103 (10th Cir. 2020) (cleaned up).

Second, similar to the canon of *noscitur a sociis*, the canon of *in pari materia* counsels that "statutes addressing the same subject matter generally should be read as if they were one law." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315–16 (2006) (quotation marks and citation omitted). This canon "does not require reading a single statute in isolation, but rather [counsels consideration of] other statutes dealing with the same subject matter." *United States v. Arciga-Bustamante*, 276 F. App'x 716, 721 (10th Cir. 2006)

9

(citation omitted); *see also Planned Parenthood of Rocky Mountains Servs., Corp. v. Owens*, 287 F.3d 910, 923 n.13 (10th Cir.2002) ("Under the doctrine of *in pari materia*, a court will interpret a statute by examining other statutes dealing with the same subject as the statute being construed.") (citing 2B NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51.01 (6th ed.2000)). This canon "rests on two sound principles: (1) that the body of the law should make sense, and (2) that it is the responsibility of the courts, within the permissible meanings of the text, to make it so." SCALIA & GARNER, *supra* at 252.

Third, statutory language must be given effect. It is fundamental that a statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018) (quotation marks and citation omitted); *see also BP Am. Prod. Co.*, 87 F.4th at 1234–35 (noting that, when possible, courts "try to give effect to each word and only reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute.") (quotation marks and citation omitted).

Fourth, when a general and specific statute conflict, the specific statute controls. *WildEarth Guardians v. National Park Service*, 703 F.3d 1178, 1189 (10th Cir. 2013). This is often referred to as the general vs. specific canon of statutory interpretation. Application of this canon depends on the scope of

10

the conflicting provisions, not their nature. *United States v. Wesley*, 60 F.4th 1277, 1284 (10th Cir. 2023).

### 2. Controlled Substance Charges

#### a. The Parties' Arguments

Defendants argue that the plain and ordinary meaning of the CSA does not criminalize poppy seeds. [ECF No. 79 at 4–7]. Defendants primarily point to the statutory definitions of "opium poppy" and "poppy straw," each of which exclude poppy seeds from their definition.[3] [*Id*. at 6] (quoting 21 U.S.C. § 802(19)–(20)). Defendants do not explicitly differentiate between the controlled substances charges and the precursor charges in their motion. Rather, Defendants argue that the plain meaning of the cited portions of the CSA make it clear that poppy seeds are wholly exempted from criminality.

The government argues in response that the superseding indictment "clears the low hurdle of defeating a motion to dismiss" because the government's allegations focus on the distribution, possession with intent to distribute, and conspiracy to distribute morphine, codeine, and thebaine, all of which are controlled substances. [ECF No. 86 at 15]. The government explains that controlled substances include "'a drug or other substance, or immediate precursor, included in' the federal drug schedules." [*Id*.] (quoting

---

[3] Every reference to poppy straw, seeds, or other parts of the poppy plant herein is a reference to Papaver somniferum L., a plant commonly known as the opium poppy.

21 U.S.C. § 802(6)). The government further argues that it should prevail

because it can establish the knowledge requirements under 21 U.S.C.

§ 841(a)(1) by showing that Defendants knew that they possessed some

controlled substance (even if they did not know which one), that they knew

they possessed a particular controlled substance (even if they did not know it

is a controlled substance), or that they were deliberately indifferent about

whether the substance was a controlled substance. [ECF No. 86 at 15–16].

With respect to the Defendants' arguments about the CSA's definitions for

"opium poppy" and "poppy straw," the government contends that poppy seeds

nevertheless fit within the CSA's definition of "opiate" or "opioid" under 21

U.S.C. § 802(18). [*Id*. at 16].[4]

### b. Discussion

The superseding indictment must be read "as a whole and interpreted in a

common-sense manner . . . ." *United States v. Stoner*, 98 F.3d 527, 531 (10th

Cir. 1996). Even though the superseding indictment sometimes refers to just

morphine, codeine, and thebaine, rather than poppy seeds, the only source of

those substances alleged in the superseding indictment is the opium latex

that coats poppy seeds. As alleged by the government, unprocessed poppy

seeds are poppy seeds coated in opium latex that have not had the opium

---

[4] During the hearing on Defendants' motion to dismiss, the government appeared to abandon this argument. Because this argument was briefed, however, I will address it.

latex removed after harvest. [ECF No. 98 at 2]. Therefore, as alleged by the government, poppy seeds are naturally coated in opium latex as a part of the harvesting process. In other words, and based only on the language in the superseding indictment, one cannot have *just* a poppy seed without that seed *first* being coated in opium latex at some point in the process. The seed and the opium latex are one in the same until the coating is removed at some later point. For the reasons explained below, fundamental principles of statutory interpretation show that conduct involving poppy seeds—regardless of whether they are coated with opium latex—cannot support the controlled substance charges.

The CSA defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). The drug schedules were originally published at 21 U.S.C. § 812, but they now reside in the Code of Federal Regulations at 21 C.F.R. § 1308.11 *et seq*. In relevant part, Schedule II lists the following:

- <u>21 C.F.R. § 1308.12(b)(1) (emphasis added)</u>: "(b) Substances, vegetable origin or chemical synthesis. *Unless specifically excepted* or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

    (1) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate excluding apomorphine, thebaine-derived butorphanol, dextrorphan, nalbuphine,

naldemedine, nalmefene, naloxegol, naloxone, 6ß-
naltrexol, naltrexone, and samidorphan, and their
respective salts, but including the following: (i) Codeine …
(ix) Morphine … (xviii) Thebaine . . . ."

- 21 C.F.R. § 1308.12(b)(3): "Opium poppy and poppy straw."

- 21 C.F.R. § 1308.12(b)(5): "Concentrate of poppy straw (the
crude extract of poppy straw in either liquid, solid or powder
form which contains the phenanthrene alkaloids of the opium
poppy)."

Taking these statutory and regulatory terms together, the relevant

following terms fall under the umbrella of "controlled substance[s]" that are

criminalized under the CSA: "immediate precursor;" "opium" or "opiate;"

"opium poppy;" and "poppy straw." The CSA defines most of these terms:

- Immediate precursor: "means a substance--

  o (A) which the Attorney General has found to be and by
  regulation designated as being the principal compound
  used, or produced primarily for use, in the manufacture
  of a controlled substance;

  o (B) which is an immediate chemical intermediary used or
  likely to be used in the manufacture of such controlled
  substance; and

  o (C) the control of which is necessary to prevent, curtail,
  or limit the manufacture of such controlled substance." 21
  U.S.C. § 802(23).

- Opium:[5] "Opium, opiates, derivatives of opium and opiates,
including their isomers, esters, ethers, salts, and salts of
isomers, esters, and ethers, whenever the existence of such
isomers, esters, ethers, and salts is possible within the specific

---

[5] The CSA does not individually define "opium," but that term appears in the
definition of "narcotic drug."

14

chemical designation. Such term does not include the isoquinoline alkaloids of opium." *Id*. § 802(17)(A).

- Opiate: "The term 'opiate' or 'opioid' means any drug or other substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having such addiction-forming or addiction-sustaining liability." *Id*. § 802(18).

- Opium Poppy: "The term 'opium poppy' means the plant of the species Papaver somniferum L., *except the seed thereof*." *Id*. § 802(19) (emphasis added).

- Poppy Straw: "The term 'poppy straw' means all parts, *except the seeds*, of the opium poppy, after mowing." *Id*. § 802(20) (emphasis added).

It is plain and unambiguous that the terms "opium poppy" and "poppy straw" specifically exclude poppy seeds under the CSA. That leaves the question: Do the terms "seed" and "seeds," as those terms are used in § 802(19)–(20), include seeds that are coated in opium latex? Based on fundamental canons of statutory interpretation, the answer to that question is yes.

The CSA does not distinguish between seeds that have different levels of processing or seeds that have or have not had opium latex removed from them. I can only look to the facts as they are alleged in the superseding indictment. *See United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006). Based on the facts alleged in the superseding indictment, and as noted above, poppy seeds and opium latex are one in the same as a part of the harvesting process until some later process is undertaken to remove the opium latex.

15

Therefore, the reference to "seed" and "seeds" in § 802(19)–(20) includes the opium latex that naturally coats poppy seeds as a part of the harvesting process.

The rest of the CSA's definition section provides supporting context for this conclusion. For example, 21 U.S.C. § 802(17)(C) includes coca leaves in the definition of "narcotic drug." That section states that "narcotic drug[s]" include coca leaves, "except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed." *Id*. The CSA also defines marijuana as "all parts of the plant Cannabis sativa L., whether growing or not; *the seeds thereof*; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, *its seeds* or resin." *Id*. § 802(16)(A) (emphasis added). The language in 21 U.S.C. § 802 about other plant materials demonstrates that Congress knows how and when to differentiate between component parts and chemicals from plants that *are* controlled substances, and those that *are not* controlled substances. Congress did not make any such distinction with poppy seeds, so § 802(19)–(20) excludes all poppy seeds, regardless of whether they are coated in opium latex.

Because poppy seeds are excluded from the definition of "opium poppy" and "poppy straw," the question is whether poppy seeds could be considered a

16

controlled substance under some other definition within the CSA. According to the government, the answer to that question is yes because poppy seeds fall under the definition of "opiate" or "opioid" in 21 U.S.C. § 802(18) *See* [ECF No. 86 at 16]. If poppy seeds do not qualify as a controlled substance as "opium poppy" or "poppy straw," but they do qualify as an "opiate," that begs the question: Why would Congress bother to include the language in § 802(19)–(20) specifically excluding seeds? Fundamental principles of statutory interpretation answer that question.

As noted above, a statute is "construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018) (quotation marks and citation omitted). If one accepts the government's position that poppy seeds are "opium" or an "opiate," or even if one argues that they an "immediate precursor,"[6] that outcome must be squared with the fact that poppy seeds are also excluded from the definition of "opium poppy" or "poppy straw" as those terms are defined in the CSA. The entire point of defining terms in § 802 that appear in the drug schedules is to define the

---

[6] Notably, although the definition of "immediate precursor" is "a substance … which the Attorney General has found to be and by regulation designated as being the principal compound used, or produced primarily for use, in the manufacture of a controlled substance." 21 U.S.C. § 802(23)(A). However, the government has not identified any such regulation that specifically identifies poppy seeds coated with opium latex.

scope of what *is* a controlled substance, and what *is not* a controlled substance. If one subsection includes poppy seeds within the scope of controlled substances, but another subsection explicitly says they are not and a court only gives effect to the broader subsection that includes poppy seeds, then the language excluding seeds is meaningless. I will not apply the CSA in a way that renders any portion of § 802(19)–(20) meaningless.

The same goes for the government's argument that it does not matter whether poppy seeds are themselves controlled substances because they can prove that Defendants knew or were deliberately indifferent about the fact that the seeds were being purchased as a source of morphine, codeine, and thebaine. If poppy seeds were considered a controlled substance because of the morphine, codeine, and thebaine they are naturally coated in as a part of the harvesting process, that would similarly render the exclusionary language in § 802(19)–(20) meaningless. That is because: (1) poppy seeds are naturally coated in a substance that contains morphine, codeine, and thebaine; and (2) Congress did not distinguish between washed, unwashed, processed, or unprocessed seeds in the same way that it distinguished between plants like coca leaves and marijuana and the naturally occurring component parts of those plants. The government's arguments are rejected on this point.

In addition to the problem with rendering the exclusionary language meaningless, the general vs. specific canon of statutory interpretation provides guidance. This canon focuses on the scope of the statutes, not their nature, and courts "interpret the more specific statute as an exception to the more general statute." *WildEarth Guardians v. National Park Service*, 703 F.3d 1178, 1189 (10th Cir. 2013). 21 U.S.C. § 802(18) broadly defines all opiates, which are schedule II controlled substances. 21 U.S.C. § 802(19)–(20) defines a narrower scope of opiates, "opium poppy" and "poppy straw." Even if poppy seeds could be included in the broader definition of "opiate," that conflicts with the exclusionary language in § 802(19)–(20). Because these statutes conflict, and because § 802(19)–(20) is the more specific statute, the exclusionary language in § 802(19)–(20) controls. Under the general vs. specific canon, poppy seeds are not a controlled substance.

Because poppy seeds are not a controlled substance, the controlled substance charges, counts 1–10 & 19–41 of the superseding indictment, must be dismissed.

### 3. Precursor Charges
#### a. The Parties' Arguments

Defendants do not differentiate their statutory interpretation arguments between the controlled substance charges and the precursor charges.

19

Therefore, Defendants' arguments on this point are presumed to be the same as those made for the controlled substance charges.

In response to Defendant's arguments, the government argues that the statutes supporting the precursor charges are not limited to "prosecutions for methamphetamine precursors." [ECF No. 86 at 17]. The government further argues that it is not a defense that poppy seeds are sold at grocery stores since the charging language sufficiently alleges that Defendants had the requisite knowledge under 21 U.S.C. § 843(a)(6)–(7). [*Id.* at 17–18].

### b. Discussion

Like with any statutory interpretation issue, the analysis begins with the text. The precursor statute makes the following unlawful:

> (6) to possess any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance or listed chemical in violation of this subchapter or subchapter II;

> (7) to manufacture, distribute, export, or import any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance or listed chemical in violation of this subchapter or subchapter II or, in the case of an exportation, in violation of this subchapter or subchapter II or of the laws of the country to which it is exported;

21 U.S.C. § 843(a)(6)–(7).

Assuming Defendants knew, intended, or had reasonable cause to believe their poppy seeds would be used to manufacture a controlled substance or listed chemical, the remaining question is whether poppy seeds are a "three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any equipment, chemical, product, or material." The only two terms that poppy seeds could possibly fall under are "product" and "material." Using the *noscitur a sociis* and *in pari materia* canons of statutory interpretation, poppy seeds are neither a "product" nor "material" as those terms are used in 21 U.S.C. § 843(a)(6)–(7).

<u>*Noscitur a sociis*</u>

Other than the terms "product" and "material," the things listed in 21 U.S.C. § 843(a)(6)–(7) are all mechanical, industrial, or otherwise manmade items that may be used to manufacture a controlled substance. Given the context of the other words in this list, plant material like poppy seeds does not fall within the scope of § 843(a)(6)–(7). Certainly, poppy seeds could qualify as a "product" or "material" in some contexts. For example, poppy seeds were Defendants' "product" that they sold to customers, and it would be fair to say that poppy seeds were the "material" in Defendants' shipments. But here, terms like "machine," "chemical," and "equipment" narrow and

contextualize the scope of the terms "product" and "material" such that a proper reading of § 843(a)(6)–(7) excludes poppy seeds.

<u>*In pari materia*</u>

Setting aside the problem with reading the terms "product" and "material" as including poppy seeds under the *noscitur a sociis* canon, assume for the sake of argument that poppy seeds are included under a broad interpretation of those terms. If you zoom out to see the entire structure and scheme of the CSA, including poppy seeds in the scope of § 843(a)(6)–(7) is still improper because it leads to results that do not make any sense.

At its core, the CSA outlines which drugs and substances are unlawful to possess, manufacture, and distribute. That is done by listing various substances in the drug schedules and defining those terms in 21 U.S.C. § 802. 21 U.S.C. § 841(a)(1) makes it unlawful to possess, manufacture, and distribute those listed controlled substances. Two defined controlled substances refer to poppy seeds, and the explicit statutory language in those definitions excludes them from the definition of controlled substances while including component parts of other plants. Section III(A)(2)(b), *supra*. In other words, Congress has put the public on notice that that poppy seeds are legal under § 841(a)(1). In turn, § 843(a)(6)–(7) lists things that are not themselves controlled substances, but could be used to manufacture controlled substances. It does not make any sense for Congress to carve

22

poppy seeds out of § 802 to allow prosecution under § 843(a)(6)–(7) when it could have just defined poppy seeds as a controlled substance.

What would be the purpose of permitting prosecution under § 843(a)(6)–(7) and not under § 841(a)(1)? Perhaps Congress chose to exclude poppy seeds from the definition of opium poppy and poppy straw because it wanted to subject poppy seeds to less punishment than schedule II controlled substances. A violation of § 841(a)(1) could result in imprisonment up to life, but a violation of § 843(a)(6)–(7) generally carries a lower penalty. *Compare* 21 U.S.C. § 841(b)(1)(C) *with* 21 U.S.C. § 843(d).

If that were the motive, though, Congress could have just moved poppy seeds to a lower drug schedule with lower penalties. *See* 21 U.S.C. § 841(b)(2)–(3) (setting lower penalties for schedule IV and V controlled substances). Doing that would also have the benefit of avoiding the *noscitur a sociis* interpretation issues.

Under the canons of *noscitur a sociis* and *in pari materia*, poppy seeds are not a "product" or "material" under 21 U.S.C. § 843(a)(6)–(7). Therefore, the precursor charges, counts 1, 11–18, & 21–41 of the superseding indictment, must be dismissed.

## B. Due Process

Even assuming that the superseding indictment could survive the above statutory interpretation analysis, Defendants prevail on due process grounds.

23

### 1. Legal Framework

The due process issues raised here are questions of law for the court to resolve. *See United States v. Walker*, 74 F.4th 1163, 1184 (10th Cir. 2023) (noting that "appellate courts are not bound by the government's concessions or stipulations on questions of law" in the context of a fair notice and due process analysis).

The Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend V. "Vague laws contravene the first essential of due process of law that statutes must give people of common intelligence fair notice of what the law demands of them." *United States v. Davis*, 588 U.S. 445, 451(2019) (quotation marks and citation omitted). Stated otherwise, the government may not impose "sanctions under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Welch v. United States*, 578 U.S. 120, 124 (2016) (quotation marks and citation omitted); *see also United States. v. Morales-Lopez*, 92 F.4th 936, 941 (10th Cir. 2024). "Vague laws also undermine the Constitution's separation of powers [because they] threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Davis*, 588 U.S. at 451.

Statutes are unconstitutionally vague either on their face or as applied. *United States v. Lesh*, 107 F.4th 1239, 1246 (10th Cir. 2024), *petition for cert. filed*, No. 24-654. A statute is vague on its face "and thus void, where 'no set of circumstances exists under which the [regulation] would be valid.'" *Id*. (citation omitted). An as-applied vagueness challenge to a statute "tests the application of that restriction to the facts of a plaintiff's concrete case." *Id*. (internal quotation marks and citation omitted). The distinction between facial and as-applied challenges to a law's constitutionality "goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). "[I]t does not speak at all to the substantive rule of law necessary to establish a constitutional violation[;]" therefore, the same substantive constitutional analysis applies. *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019).

### 2. The Parties Arguments

The Parties' arguments in their briefing on the vagueness/notice issue are combined as to the controlled substance and precursor charges, so they will be addressed together.

Defendants argue that the statutes they are charged under are unconstitutionally vague and fail to provide fair notice as applied to them. They say this is because poppy seeds are excluded from the CSA, their poppy seeds "were legally imported, were deemed safe, were distributed to the

Defendants, and the Defendants were granted a trademark for selling unprocessed poppy seeds which could only be done if the sale of unprocessed poppy seeds were legal." [ECF no. 79 at 11].

The government responds by analogizing Defendants' position to the fact that marijuana is still unlawful if it is in a gummy, and LSD is still unlawful if it is on blotting paper. [ECF No. 86 at 20]. The government says that this is because "as alleged in the [superseding] indictment, [Defendants] knew that they were selling opiates, [so] their void for vagueness challenge fails." [*Id.*]. This, according to the government, differentiates Defendants' conduct from other poppy seed sales, and makes them guilty of the precursor charges as well. [*Id.* at 20–21].

The government further argues that Defendants' knowledge can be inferred by their conduct. [*Id.* at 21]. For example, their knowledge about controlled substances can be inferred from the large quantity of seeds they sold, the fact that they sold to individuals rather than businesses, and the high prices they charged. [*Id.* at 21–23]. Lastly, the government alleges that Defendants received several warnings about the nature of their poppy seeds. [*Id.* at 23–24].

Similar to their arguments on statutory interpretation, Defendants' arguments about due process, notice, and vagueness are not particularly

detailed or in depth. However, Defendants' arguments sufficiently raise the issue such that I may conduct a full analysis.

### 3. Discussion

Just as this is not the typical drug case, this is not the typical vagueness, notice, or fair warning case. Nobody disputes that morphine, codeine, and thebaine are all controlled substances. Nor does anyone dispute that those substances are in the opium latex that coats poppy seeds as a natural part of the harvesting process. The hangup is that despite all of this, the CSA nevertheless carves poppy seeds out of the definition used to describe the plant the seeds come from, regardless of whether the seeds are coated with opium latex.

### a. The Khat Cases and Due Process Principles

This case is similar to the notice issues in cases involving the khat plant. Khat is commonly used by people in East African and Arabian Peninsular countries. The leaves of the plant may be chewed or brewed into a tea. *United States v. Caseer*, 399 F.3d 828, 830 (6th Cir. 2005). The plant has stimulant properties, and it contains cathinone and cathine, both of which are controlled substances. *Id.* (citing 21 C.F.R. §§ 1308.11(f),1308.14(e)).

Although khat is not listed as a controlled substance, the defendant and the others involved in the case were charged with controlled substance charges based on the cathinone in the khat plant. *Id.* at 832. The defendant

27

moved for a judgment of acquittal under Fed. R. Crim. P. 29, arguing: "(1) that his constitutional right to due process had been violated because he had not been fairly warned of the criminality of his actions; (2) that khat qualified as a food item not subject to regulation by the Controlled Substances Act; and (3) that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [defendant] intended to import cathinone." *Id*. The Sixth Circuit reversed the conviction because of the insufficiency of the evidence, not because of the notice/fair warning issues. *Id*. at 844. I do, however, agree with the opinion of Judge Holschuh concurring in part and dissenting in part in which he explained why the CSA does not provide adequate notice that the khat plant is illegal.

The drug schedules and the CSA's definition section identify several plants in addition to their psychoactive substances and other component parts of those plants. In the case of the khat plant, Judge Holschuh explained why this structure presents a fatal due process issue:

> The regulations, therefore, list a number of specific plants as being themselves controlled substances, giving clear warning that possession of these plants is illegal, regardless of whether the person is aware that the plant contains a particular chemical substance that has a psychoactive effect. Remarkably—and in my opinion, fatally—absent from the regulations is the khat plant. Any person who wants to know whether it is illegal to make a cup of tea from the khat plant would find that, in contrast to other plants such as the marihuana plant, the peyote cactus plant, the poppy plant, and the coca plant, there is no reference of any kind to the khat plant any place in the law of the United States, *i.e.*,

28

> either in statutes or in regulations. I totally agree with the majority's statement that "the term 'cathinone' is sufficiently obscure that persons of ordinary intelligence reading the controlled substances schedules probably would not discern that possession of khat constitutes possession of a controlled substance." I would go further, however, because it is my opinion that persons of ordinary intelligence reading the controlled substances schedules could reasonably conclude that possession of the khat plant is clearly *not illegal* because, unlike other plants containing naturally-produced psychoactive substances, the khat plant is not listed.

*Id*. at 849–50 (Holschuh, J., concurring in part and dissenting in part).

The notice issues are not exactly the same for poppy seeds as they are for the khat plant. With the khat plant, the problem is that it is not listed at all while other plants are. *Id*. at 852. ("I don't think it is 'a stretch' to believe that persons of ordinary intelligence, seeing other plants specifically listed as being illegal but not the khat plant, could reasonably conclude that they can lawfully possess the khat plant."). Judge Holschuh also agreed with the majority that the controlled substance khat contains, cathinone, was "sufficiently obscure that persons of ordinary intelligence reading the controlled substances schedules probably would not discern that possession of khat constitutes possession of a controlled substance." *Id*. at 853.

In some ways, the exclusionary language in 21 U.S.C. § 802(19)–(20) presents an even bigger notice problem. Morphine is a more commonly known controlled substance than cathinone. But not only are poppy seeds not listed as one of the many plants that are defined in 21 U.S.C. § 802, they are

*specifically excluded* from the definition of "opium poppy" and "poppy straw," the parts of the poppy plant that *are* a controlled substance. A person of ordinary intelligence reading the drug schedules and the definitions in § 802 would come to the commonsense conclusion that poppy seeds are not a controlled substance, and that because Congress excluded poppy seeds from the definition of the controlled substance, those seeds are legal to possess, use, and distribute.

As for the precursor charges, 21 U.S.C. § 843(6)–(7) does not provide adequate notice that poppy seeds are prohibited. In *Caseer*, the applicable regulation prohibited "any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers, and salts of isomers . . . Cathinone." *Caseer*, 399 F.3d at 833 (quoting 21 C.F.R. § 1308.11(f)(4)). Judge Holschuh explained that it is not "'perfectly clear' that the word 'material' includes plant life," let alone khat. *Id.* at 850–51. He further explained that the word "material" "should not be plucked from the language of 21 C.F.R. § 1308.11(f) and considered in a vacuum," and that fundamental canons of statutory interpretation such as reading words in their context should be followed. *Id.* at 851.

In the context of the regulation covering cathinone, reading the term "material" as including plant life would render the listing of other controlled

30

substance plants such as marijuana and peyote meaningless, "and the use of the same words 'compound,' 'mixture,' or 'preparation' in the description of those plants, clearly would be superfluous." *Id.*[7] The same is true for the charges brought against the defendants under 21 U.S.C. § 843(a)(6)–(7). As noted above in Section III(A)(3), *supra*, the principles of statutory interpretation counsel against reading § 843(a)(6)–(7) as prohibiting any kind of poppy seeds. But this is also a due process issue. A person of common intelligence would read those provisions as prohibiting laboratory equipment, chemicals, machines, and substances that are used to aid in the manufacturing of a controlled substance, not plant materials specifically excluded from the CSA.

One of the government's overarching theories in this case is that regardless of whether poppy seeds are a controlled substance in and of themselves, Defendants' knowledge about the properties of their seeds (i.e. their knowledge about the morphine, codeine, and thebaine they contain) permits prosecution. I agree with Judge Holschuh's reasoning on this point as well. In the khat/cathinone context, he explained:

> The due process problem with this regulation is not a vagueness problem, but the manner in which the DEA has chosen to list

---

[7] I acknowledge that Judge Holschuh says this reasoning is not the basis of his dissent, and that the larger constitutional notice issue with specifically omitting the khat plant from the drug schedules was his focus. Nevertheless, I find the reasoning on this point persuasive.

controlled substances in the schedules. While it has chosen to list some specific plants by their commonly known names as well as their psychoactive substances, it has chosen to list only the psychoactive substances found in the khat plant—substances that are not found in any mainstream dictionaries—and failed to include or mention in any way the khat plant. A person of ordinary intelligence desiring to know whether it is illegal to chew khat during Ramadan or to join friends for a cup of khat tea would not find khat mentioned any place in the laws of the United States.

*Caseer*, 399 F.3d 828, 856. Similarly, for a person of ordinary intelligence wanting to know if it is illegal to deal with unprocessed or unwashed poppy seeds, the clearest statutory statement on the issue is that poppy seeds are *excluded* from the relevant controlled substance definitions. Further, because Congress differentiated between naturally occurring materials and the substances they contain, *see* Section III(A)(2)(b), *supra* (discussing the definitions of marijuana and coca leaves), a person of ordinary intelligence would reasonably look no further than the exclusionary language of 21 U.S.C. § 802(19)–(20) and conclude that poppy seeds, regardless of whether they are coated in opium latex, are legal.

To be sure, "for over a century federal courts have adjudicated challenges to the constitutionality of penal statutes by relying on the general rule that a defendant to whose conduct a statute clearly applies may not pose a facial challenge to the statute." *United States v. Morales-Lopez*, 92 F.4th 936, 941 (10th Cir. 2024) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)).

But for the reasons explained above in Section III(A), *supra*, it is not clear that Defendants' alleged conduct violates the CSA.

Because the CSA, as applied to these defendants, did not provide adequate notice that their conduct related to poppy seeds was unlawful—regardless of whether the seeds were coated in opium latex—all of the counts brought against Defendants Brandon David McCarthy and Rachel Christine McCarthy in the superseding indictment must be dismissed.

### b. Other Notice Issues

The government's arguments about marijuana in gummies or LSD on blotting paper are unpersuasive. The government does not allege that marijuana naturally occurs in gummy form, nor does it allege that LSD naturally occurs on blotting paper. Further, neither gummies nor blotting paper are mentioned in 21 U.S.C. §§ 802, 843(a), or the drug schedules. In the government's examples, a defendant puts a known controlled substance into or onto some other vehicle that the controlled substance does not naturally occur in or on. But in this case, the very thing that the government focuses its allegations on, the poppy seed, is naturally coated in a substance that contains otherwise prohibited controlled substances. Nevertheless, Congress excluded poppy seeds from the definition of a controlled substance regardless of whether they are coated in opium latex. The explicit exclusionary language in § 802(19)–(20) must control.

33

Another fundamental due process and notice issue is that the government cannot draw any reasonably identifiable line for how much opium latex is acceptable to have on poppy seeds under the CSA. The government says it intends to introduce "expert testimony showing that, while washed poppy seeds contain only traces of opiates (much in the same way some U.S. currency in circulation contains traces of cocaine), the unwashed poppy seeds sold by the McCarthys contained fatal or near-fatal doses of morphine."[8] [ECF No. 86 at 9–10].

While this statement is not the government's main argument about due process and notice, it is a tacit admission that some "trace" amounts of opium latex on poppy seeds are acceptable. To the extent the government is arguing that the amount of opium latex on a poppy seed is what makes it unlawful, that presents at least two fundamental problems: (1) the government does not point to any such threshold in the CSA or any applicable regulations;[9]

---

[8] It is unclear why the government focuses here on the amount of opium latex on seeds. Elsewhere, the government argues that it is the defendants' knowledge that makes the case, not the amount of latex. [ECF No. 86 at 16] ("Since the McCarthys unquestionably knew they were distributing opiates … the government is not 'incapable' of proving the violations stemming from § 841(a)(1) 'as a matter of law.'"). To the extent that the government is *also* arguing that the amount of opium latex coating poppy seeds is relevant to whether they are a controlled substance or are otherwise prohibited by the CSA, I will address the due process issues with the government's position.

[9] Notably, the government alleges in the superseding indictment that "*Industry standard* requires suppliers to process the poppy seeds to an edible food grade

and (2) this approach would impermissibly leave the question of legality up to prosecutorial discretion.

The government seems to indicate that "trace" amounts of opiates on seeds are acceptable in the same way as "trace" amounts of cocaine on U.S. currency are acceptable, but "fatal" or "near-fatal" amounts are not. The CSA at least sets some guidance on the penalties associated with specified amounts of cocaine. *See generally* 21 U.S.C. § 841(b)(1)(A)(ii). But the government has not pointed to any similar statutory, regulatory, or other published guidance on an acceptable amount of opium latex covering poppy seeds. Bolstered against the exclusionary language in 21 U.S.C. § 802(19)–(20), the Due Process Clause does not allow a system where prosecutors alone decide what is lawful. *See Snyder v. United States*, 603 U.S. 1 at 15–16 (2024).

Because the CSA, as applied to these defendants, did not provide adequate notice that their conduct related to poppy seeds was unlawful—regardless of whether the seeds were coated in opium latex—all of the counts brought against Defendants Brandon David McCarthy and Rachel Christine McCarthy in the superseding indictment must be dismissed.

---

standard." [ECF No. 98 at 3] (emphasis added). The government does not say what that industry standard is, nor does it point to any statutory or regulatory standards.

### C. Remaining Issues

#### 1. Congressional Delegation and the Stephen Hacala Poppy Seed Safety Act

##### a. The Parties' Arguments

Defendants argue that Congress could have criminalized poppy seeds with a specified level of opium latex on them, but it did not, and that "regulation of poppy seeds and any contamination around them has been delegated to the Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act." [ECF No. 79 at 7]. As a part of this delegation, Defendants argue that "the FDA, to the exclusion of the Controlled Substances Act, maintains the power to act when poppy seeds are adulterated or unsafe" and the "delegation of poppy seed safety to the Food and Drug Administration rather than a possibility of criminal prosecution is clear." *Id.*

Defendants also cite to a Congressional report acknowledging potential consequences from using "contaminated imported poppy seeds" and a failed legislative effort to criminalize poppy seeds as evidence that poppy seeds are not currently criminalized. [*Id.* at 8] (citing H.R. REP. NO. 117-82, at 102 (2021); H.R. 2078, 116th Cong. (2019); S. 1016, 116th Cong. (2019)).[10] Because H.R. 2078, the "Stephen Hacala Poppy Seed Safety Act," provided a maximum penalty of one year imprisonment and/or a $1,000 fine under the

---

[10] Because H.R. 2078, 116th Cong. (2019) and S. 1016, 116th Cong. (2019) are identical, I will refer to them collectively as "HR 2078."

Food, Drug, and Cosmetic Act, but not under the CSA, Defendants argue that "Congress understood that poppy seeds, including contaminated and unsafe seeds, are regulated by the Federal Food, Drug, and Cosmetic Act rather than the Drug Abuse Prevention and Control Act." [ECF No. 79 at 8–9].

The government argues in response that if H.R. 2078 had passed, "that would simply have allowed the misdemeanor prosecution of a class of persons not currently eligible for prosecution: those who aren't specifically aware of the opiate content of unwashed poppy seeds but who know only that the seeds are unwashed." [ECF No. 86 at 25]. H.R. 2078 also makes no difference, according to the government, because the Defendants' conduct in this case still qualifies as knowingly distributing opiates and precursors. [*Id*.]. The government further argues that the FDA's regulation of poppy seeds has no bearing on the criminality of Defendants' conduct because other areas of criminal law have coexisting regulatory schemes. [*Id*. at 25–26]. The government also points out that Defendants do not cite any authority for the proposition that a coexisting food safety regulatory scheme exempts them from prosecution under the CSA. [*Id*. at 26].

### b. Discussion

Defendants do not cite any specific authority that says the existence of a food safety regulatory scheme involving poppy seeds means that poppy seeds are wholly exempted from the CSA's prohibitions. Nor do they fully explain

why the structure or text of the Food, Drug, and Cosmetic Act or any of the relevant regulations lead to that conclusion. Defendants do, however, cite to the regulation that generally recognizes poppy seeds as safe. [ECF No. 79 at 7] (citing 21 C.F.R. § 182.10). Defendants do not explicitly discuss this point in the context of statutory interpretation analysis. I do not need to reach the statutory interpretation question because the analysis in Section III(A), *supra*, is sufficient.

The larger issue for Defendants on the congressional delegation point is that they do not cite any authority that says the existence of food safety statutes and regulations that deal with poppy seeds somehow exempts them from criminal liability under the CSA. To be sure, Defendants cite to *U.S. v. Two Bags, Each Containing 100 Pounds, Poppy Seeds*, 147 F.2d 123 (6th Cir. 1945), as supporting their position. But that case is not on point. *Two Bags* dealt with whether poppy seeds colored with charcoal pigment were "adulterated" in a way that violated the Food and Drug Act. As a part of its reasoning, the court did note the purpose the Food and Drug Act was to "prevent the misuse of the facilities of interstate commerce in either conveying to or placing before the consumer misbranded or adulterated articles of medicine or food . . . ." *Id*. at 127. But nothing in that case stands for the proposition that food safety rules dealing with poppy seeds prohibit

application of criminal laws, let alone the CSA. For this reason, the Defendants' general arguments on Congressional delegation are rejected.

As for the Parties' arguments regarding H.R. 2078 and H.R. REP. NO. 117-82, I do not reach that issue. Courts turn to legislative history like this only after "exhaust[ing] the traditional tools of statutory interpretation." *Kansas Nat. Res. Coal. v. United States Dep't of Interior*, 971 F.3d 1222, 1237 (10th Cir. 2020). As explained in Section III(A), *supra*, the applicable canons of statutory interpretation are sufficient to answer the question of whether poppy seeds are unlawful under the CSA. Therefore, I need not address whether H.R. 2078 or H.R. REP. NO. 117-82 inform the analysis.

## 2. Governmental Reliance
### a. The Parties' Arguments

Defendants argue that the federal government does not seize imported unprocessed poppy seeds, and that they used poppy seed suppliers that went through the FDA-created Foreign Supplier Verification Program ("FSVP") protocol for importers and vendors. [ECF No. 79 at 10]. Defendants also say that they received a trademark for their business name related to the sale of unprocessed poppy seeds, and that trademarks cannot be granted "for use in commerce that is unlawful." [*Id*. at 10–11]. According to Defendants, these facts exempt them from criminal liability.

39

In response, the government argues that not all unlawful purposes are necessarily disclosed to the United States Patent and Trademark Office, and that even if poppy seeds can have legal uses, that "does not mean poppy seeds coated with opium latex are always legal." [ECF No. 86 at 27–28]. The government also points out that the Lone Goose Bakery trademark approved class 031 poppy seeds, which are categorized as a natural agricultural product, not class 029 or 030 poppy seeds, which are processed poppy seeds that are used for human consumption. [*Id*. at 28]. The government further argues that Defendant's governmental reliance argument is misplaced because that defense requires a defendant to show engagement "by a government official to participate in a covert activity" and that the governmental agent "affirmatively misled [the defendant] as to the state of the law and [the defendant] proceeds to act on the misrepresentation," all in violation of due process protections. [*Id*. at 29] (quotation marks and citations omitted). It alleges that Defendants were not engaged or misled by a government agent and that Defendant's trademark cannot "clear[] them of wrongdoing in this case." [*Id*. at 30].

### b. Discussion

It is not entirely clear what defense Defendants raise in terms of "governmental reliance." Defendants state that "[w]hen governmental agencies directly state or imply a strict interpretation of a statute and

individuals rely on those interpretations, a strict reading of that statute is warranted." [ECF No. 79 at 10]. It is not obvious that Defendants' arguments raise a traditional entrapment defense. But assuming Defendants are asserting an entrapment defense, that argument is rejected because Defendants do not allege that a government agent induced or misled them. *See United States v. Stein*, 985 F.3d 1254, 1264 (10th Cir. 2021) (citing "government inducement" as an element of an entrapment defense); *see also United States v. Kays*, No. CR-22-40-D, 2022 WL 16541216, at *2 (W.D. Okla. Oct. 28, 2022) (listing active misleading by a government agent as an element of an entrapment defense) (quoting *United States v. Hardridge,* 379 F.3d 1188, 1192 (10th Cir. 2004)).

Defendants do note that the federal government does not seize imported unprocessed poppy seeds and that their poppy seed supplier goes through the FSVP for the purpose of ensuring that products are not adulterated and are safe. [ECF No. 79 at 10] (citing 21 U.S.C. § 384a). But that is different than being induced by or relying on a misrepresentation from a governmental agent, so Defendants' arguments on this point are rejected.

Turning to Defendants' argument about the trademark for Lone Goose Bakery, I reject this argument as well. In Defendants' view, the fact that a trademark was issued to Lone Goose Bakery for unprocessed poppy seeds absolves them of all criminal liability. It is generally true that "shipping

41

goods in violation of federal law cannot qualify as the 'use in commerce' necessary to establish trademark rights." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000); *Skratch Labs LLC v. Delivery Native, Inc.*, No. 20-cv-1565-WJM-STV, 2021 WL 1406021, at *5 (D. Colo. Apr. 14, 2021) ("To maintain a trademark, a party's use of the trademark in commerce must be lawful."). But it is not that simple when it comes to controlled substances. Sometimes conduct related to controlled substances is lawful, but other times it is not. The CSA penalizes possession, distribution, and other conduct related to controlled substances. *E.g.,* 21 U.S.C. §§ 841(a), 843(a). Of course, though, the CSA makes exceptions for things like prescriptions and people who go through the proper registration process to manufacture, distribute, and dispense controlled substances. 21 U.S.C. §§ 822(b)–(c), 822(g), 829.

To be clear, I find that poppy seeds are not controlled substances or precursors for the reasons explained above. This point just illustrates that regardless of whether poppy seeds are a controlled substance, the mere issuance of a trademark does not in and of itself answer the question of whether Defendants' conduct was lawful. That question is answered by conducting a statutory interpretation and due process analysis.

### 3. The Rule of Lenity

Defendants' argument is straightforward on this point—if there is any ambiguity about whether poppy seeds are prohibited by the CSA, the rule of lenity requires the ambiguity to be resolved in Defendants' favor. [ECF No. 79 at 9–10]. The government's argument is similarly straightforward—it contends the rule of lenity does not apply here because "the plain language of the CSA criminalizes [Defendants'] actions." [ECF No. 86 at 24–25].

The rule of lenity requires courts to interpret ambiguous statutes in favor of criminal defendants. *United States v. Tony*, 121 F.4th 56, 69 (10th Cir. 2024) (quoting *United States v. Gay*, 240 F.3d 1222, 1232 (10th Cir. 2001)). However, the rule "applies only if a statute remains grievously ambiguous after we have consulted everything from which aid can be derived." *Brown v. United States*, 602 U.S. 101, 122 (2024) (internal quotation marks and citations omitted).

For the reasons set forth in Sections III(A)–(B), *supra*, I find that poppy seeds are not criminally prohibited as a controlled substance or precursor, and that the traditional canons of statutory interpretation and fundamental principles of due process, as applied to these defendants, require this result without any remaining ambiguity. The rule of lenity therefore need not be invoked, and Defendants' arguments on this point are rejected.

43

Although I do not reach the lenity question (such as it is) because of the Supreme Court's instruction in *Brown*, Justice Gorsuch's concurring opinion in *Snyder v. United States*, 603 U.S. 1, 20–21 (2024) (Gorsuch, J., concurring) raises an important point. In that opinion, Justice Gorsuch aptly notes that when courts speak of things like "fair notice," "fair warning," and prohibiting reliance on prosecutorial discretion to narrow the scope of broad criminal laws, these are all really just different masks or labels that courts have given the rule of lenity. *Id*. ("But make no mistake: Whatever the label, lenity is what's at work behind today's decision, just as it is in so many others."). So, while I have fully analyzed the due process issues above ("vagueness," "notice," "fair warning," etc.) as the cases discuss them and as I am directed to do, Justice Gorsuch is likely correct that the rule of lenity is the principle that underlies these issues.

## IV.  Conclusion

As alleged by the government, the poppy seeds that the Defendants' sold caused the death of one of their customers. Defendants appear to have known about the potentially deadly consequences from misusing their product, and they gathered a small fortune by running their business. However, Congress chose to use language in the CSA that does not prohibit poppy seeds, and I am bound by those words.

44

Just as I am bound by the words Congress chooses, I must also enforce every defendant's rights. Our system of laws requires more than allegations of contemptuous conduct. Criminal statutes must be strictly read according to their text, context, the rules of statutory interpretation, and in harmony with due process principles. In this case, the plain text and context of the statutes that Defendants are charged under do not make it clear that possession, distribution, or other conduct related to poppy seeds is unlawful. On the contrary, the canons of statutory interpretation and fundamental principles of due process make it clear that poppy seeds are lawful. For the reasons stated herein, all of the counts alleged against Defendants in the superseding indictment [ECF No. 98] are hereby DISMISSED.

As referenced above, the principles that underpin the rule of lenity echo the importance of the conclusion in this case:

> Doubtless, lenity carries its costs. If judges cannot enlarge ambiguous penal laws to cover problems Congress failed to anticipate in clear terms, some cases will fall through the gaps and the legislature's cumbersome processes will have to be reengaged. But, as the framers appreciated, any other course risks rendering a self-governing people "slaves to their magistrates," with their liberties dependent on "the private opinions of the judge." … From the start, lenity has played an important role in realizing a distinctly American version of the rule of law—one that seeks to ensure people are never punished for violating just-so rules concocted after the fact, or rules with no more claim to democratic provenance than a judge's surmise about legislative intentions.

*Wooden v. United States*, 595 U.S. 360, 391–92 (2022) (Gorsuch, J., concurring) (citation omitted).

IT IS THEREFORE ORDERED that the Defendants' joint motion to dismiss [ECF No. 79] is GRANTED. The superseding indictment [ECF No. 98] is DISMISSED.

DATED this 31st day of January, 2025.

_Sara Hill_

Sara E. Hill
UNITED STATES DISTRICT JUDGE